NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TD AUTO FINANCE LLC, *Plaintiff*, v. CINEMA CAR II, INC., *Defendant*. | Civil Action No. 13-cv-04230 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on Plaintiff TD Auto Finance LLC's ("TDAF" or "Plaintiff") Motion for Attorney Fees. D.E. 84. Defendant filed opposition, D.E. 88, to which Plaintiff replied, D.E. 90.[1] The Court reviewed all submissions and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Plaintiff's motion is **GRANTED**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff commenced this action against Defendant Cinema Car II, Inc. ("Cinema" or "Defendant") on July 10, 2013. D.E. 1. From approximately June 4, 2012 to January 2, 2013, Cinema "participated in the TDAF Retail Installment Contract and Lease Program" which was governed by the Retail Installment Contract and Lease Program Agreement (the "Program

---

[1] In this Opinion Plaintiff's Angelo A. Stio's declaration of counsel detailing attorney's fees and costs in support of Plaintiff's motion for attorneys' fees (D.E. 85) will be referred to as "Stio Decl." Defendant's Thomas A. Lodato's declaration in opposition to the motion of TD Auto Finance for award of legal fees (D.E. 88) will be referred to as "Lodato Decl." Plaintiff's reply brief to Defendant's opposition will be referred to as "Pl. Rep." (D.E. 90).

Agreement"). Plaintiff's Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment ("PSOMF") ¶¶ 3-4; D.E. 55. Pursuant to the Program Agreement, Cinema "originate[d] motor vehicle retail installment contracts" ("RICs"),[2] through vehicle sales to individual purchasers, and then sold "RICs that complied with the express terms and conditions of the Program Agreement" to TDAF. *Id.* ¶ 5. As noted, Plaintiff later filed suit, alleging that Cinema materially breached the Program Agreement. Complaint ¶ 21; D.E. 1.

On December 14, 2016, the Court granted Plaintiff's motion for partial summary judgment and denied Defendant's cross-motion for summary judgment. D.E. 80. In doing so, the Court found that Plaintiff is entitled to reasonable attorneys' fees and costs pursuant to the express terms of the Program Agreement. *Id.* The current motion followed. The question before the Court is whether Plaintiff's requested amount of attorneys' fees, $184,844.78, is reasonable.

## II. LAW AND ANALYSIS

This case involves an exception the American rule, where each legal party bears its own fees and expenses. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). Here, the parties agree that the Program Agreement is governed by New Jersey law, *see* PSOMF ¶ 13, and while New Jersey law generally disfavors fee-shifting, "a prevailing party can recover [attorneys'] fees if they are expressly provided for by statute, court rule, or contract." *Packard-Bamberger & Co., Inc. v. Collier*, 167 N.J. 427, 440 (2001). When a contract provides for fee shifting, the applicable contractual provision "should be strictly construed in light of [New Jersey's] general policy disfavoring the award of attorneys' fees." *Litton Indus., Inc. v. IMO Indus., Inc.*, 200 N.J. 372, 385 (2009). In granting Plaintiff's motion for partial summary

---

[2] A RIC is a "contract entered into between a consumer and a car dealer, whereby the consumer agrees to purchase a vehicle and pay over time." PSOMF ¶ 5 n.1.

2

judgment, the Court found that the Program Agreement expressly states that if TDAF is required to retain an attorney to protect its rights under the contract, it would be entitled to recover reasonable attorneys' fees and costs associated with enforcing the terms of the Program Agreement. D.E. 80; PSOMF ¶ 13.

Under New Jersey law, a court determining the reasonableness of an attorneys' fees award first looks to see whether the party entitled to attorneys' fees prevailed in the litigation and whether the litigation "was causally related to securing the relief obtained; a fee is justified if [the party's] efforts are a necessary and important factor in obtaining relief." *Litton Indus., Inc.*, 200 N.J. at 386 (internal quotations omitted). Here, the Court found that TDAF was the prevailing party and that its litigation efforts were effectuated to protect its rights pursuant to the Program Agreement. D.E. 80.

Once the threshold issue has been resolved, a court considers the non-exhaustive factors provided by the New Jersey Rules of Professional Conduct to determine reasonableness, including:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent.

N.J. Rules Prof'l Conduct R. 1.5(a). *Litton Indus., Inc.*, 200 N.J. at 386 (finding that Rule of Professional Conduct 1.5(a) requires a court to consider these factors in determining the reasonableness of an attorneys' fees award).

In addition, a court compares the requested attorneys' fees award against the Court's own fee calculation pursuant to the "lodestar" method. The lodestar method is the "number of hours reasonably expended by the successful party's counsel in the litigation, multiplied by a reasonable hourly rate." *Litton Industries, Inc.*, 200 N.J. at 386.[3] Specifically, in conducting a lodestar method analysis, a court considers the degree "of [the prevailing party's] success in determining the reasonableness of the time expended" as well as the "the reasonableness of the hourly rate of 'the prevailing attorney in comparison to rates for similar services by lawyers of reasonably comparable skill, experience, and reputation in the community." *Id.* at 387 (quoting *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 21 (2004) (internal quotations and citation omitted)).

Here, Cinema opposes TDAF's requested amount of attorneys' fees as being excessive and duplicative. Lodato Decl. ¶3. Cinema provides several specific examples[4] of why the Court should reject and decrease TDAF's requested amount of attorneys' fees.

a. <u>Reasonableness of Hours Expended</u>

---

[3] The Third Circuit also favors the use of the lodestar method for calculating attorneys' fees. The "most useful starting point for [a court] determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

[4] Cinema acknowledges that the Court imposed sanctions on it for the late production of a 2014 discovery response. At that time the Court ordered Cinema to reimburse Plaintiff's counsel for $2,988. Cinema in its opposition to Plaintiff's motion for attorneys' fees claimed that the payment was already made to Plaintiff, but that Plaintiff was, nonetheless, including the $2,988 its attorneys' fees request. Lodato Decl. ¶ 26. Plaintiff in its reply brief agreed with Defendant and reduced the amount of attorneys' fees it requested by $2,988. Pl. Rep. at 3, 8. Thus, this claim is now moot.

4

The Court will first address Cinema's claims that the number of hours Plaintiff billed are excessive and duplicative. Cinema opposes awarding attorneys' fees to more than one attorney for working on this matter. Lodato Decl. ¶¶ 4-6. Plaintiff in response provides information on which Pepper Hamilton attorneys worked on particular portions of the litigation and how long the tasks took. Pl. Rep. at 3. Specifically, Plaintiff explains that one partner, Angelo Stio, and one associate, Chad Holtzman, were the primary attorneys on this case and that four other attorneys seeking fees did minimal work, "totaling less than 23 hours and $9,840.75 in fees." *Id.* Plaintiff also provides invoices that further detail the dates, times, and work performed by the Pepper Hamilton lawyers. Stio Decl. Ex. A-C. Pepper Hamilton's records and explanation demonstrate that it was reasonable for more than one attorney to work on the matter and that the total hours worked were reasonable.

Cinema next claims that Plaintiff's bill of 30.95 hours for drafting, revising, and editing the Complaint is excessive. Lodato Decl. ¶¶ 7-10. Plaintiff, in turn, argues that 30.95 hours is not an excessive amount of time to bill for the Complaint since "[t]he Complaint relates to 52 separate [RICs] whose files had to be reviewed and whose relevant information had to be condensed into a simplified pleading." Pl. Rep. at 4. Given Plaintiff's explanation of the number of contracts involved, the Court finds that 30.95 hours is a reasonable amount of time to draft the Complaint.

Cinema takes further issue with the attorneys' fees requested in preparing the subpoena and motion to compel the deposition of Robert Marchiani[5] ("Marchiani") and the amount of time billed for the preparation and taking of Marchiani's deposition. Lodato Decl. ¶¶ 11-19. Prior to

---

[5] Defendant and Plaintiff submit different spellings of Marchiani's last name, Marchiani as opposed to Marchionni.

the deposition, Plaintiff spent 6.6 hours drafting two document subpoenas, which requested documents relevant to 52 RICs, from Marchiani and 12.8 hours drafting a motion to compel. Pl. Rep. at 5. Plaintiff also billed a total of 20.6 hours for the time spent preparing for and taking the deposition of Marchiani. Cinema contends that these fees are excessive and duplicative.

Plaintiff, however, claims that the document subpoenas were of a complex nature and that the motion to compel was necessitated "by Aftermarket sales' failure to comply with the subpoena and unreasonable delay."[6] *Id.*[7] Further, Plaintiff argues that Defendant ignores "that the deposition of Mr. [Marchiani] was unilaterally cancelled four times by either [Marchiani] or by counsel for Cinema," and that the deposition was held more than 90 minutes away from Pepper Hamilton's office to accommodate Marchiani. *Id.* at 4-5. Plaintiff adequately explains the time spent traveling to and from the deposition, the time spent arranging the deposition (and the need to do so on multiple occasions), and the time spent taking the deposition, as well as detailing why the motion to compel were necessary. In light of this information and the Court's own knowledge of the case and normal litigation practices, Plaintiff is entitled to all requested fees connected to the Marchiani deposition as they are reasonable.

Cinema next argues that Plaintiff's bill of 106.3 hours (15.5. of which are redacted) relating to its summary judgment motion is excessive. Cinema also takes issue with Plaintiff billing eight times for editing and reviewing its summary judgment motion. Lodato Decl. ¶¶ 20-

---

[6] The company After Market Sales are Profitable was the warranty administrator for each vehicle in the Schedule A and C contracts under the Program Agreement. Statement of Undisputed Facts of [Cinema] in Support of Cross-Motion for Partial Summary Judgment ("DSOMF") ¶¶ 6, 7; D.E. 69.

[7] In fact, Plaintiff contends that "Cinema's strategy throughout this litigation has been one of delay and conceal." Pl. Rep. at 5.

21. Plaintiff did not respond in any detail to these claims, so the Court's analysis is based on a review of the lodestar calculation in light of the time that might reasonably be necessary to prepare the summary judgment papers. As noted, Plaintiff's motion included a memorandum in support, D.E. 56, a statement of material facts in support of the motion, D.E 55, two declarations with a total of 16 exhibits, D.E. 57-58, and the text of a proposed order, D.E. 54. Of course, it cannot be overlooked that in accumulating the information submitted, Plaintiff's counsel had to perform a thorough review of all discovery following more than three years of litigation. As noted, Plaintiff prevailed on its summary judgment motion. Given the heft of the motion and the detailed breakdown of hours spent and tasks performed by Plaintiff's counsel, D.E. 85, the Court finds the 106.3 hours to be reasonable.

Cinema also takes issue with Plaintiff's redacting 15.5 hours of billed time related to its summary judgment motion. Lodato Decl. ¶ 32. The Court ordered that un-redacted invoices be provided for an *in camera* review, and Plaintiff complied. D.E. 95. After reviewing the un-redacted invoices, the Court finds that the redactions were appropriate pursuant to the attorney-client privilege[8] and that the 15.50 hours expended were reasonable.

Cinema further argues that Plaintiff's claim for attorneys' fees for 5.6 hours of strategy calls is unreasonable. Lodato Decl. ¶ 30. Plaintiff counters with case law supporting the merit of strategy calls as a litigation tool, *Apple Corps. V. International Collectors Soc'y*, 25 F. Supp. 2d 480, 488 (D.N.J 1998), and argues that 5.6 hours of strategy calls over a three and a half year period is not excessive. Plaintiff points out that the "5.6 hours spent on calls over the life of the

---

[8] *Cf. Montgomery County v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) (discussing when attorney billing records may contain information protected by the privilege) (citation omitted).

case equates to less than two hours per year discussing strategy with the client." Pl. Rep. at 7. The Court agrees. This case involved over three years of active litigation. It is reasonable that during this time Plaintiff counsel would (at a minimum) occasionally consult with its client, TDAF, concerning strategy. Therefore, Plaintiff's requested attorneys' fees for hours spent on strategy calls are reasonable.

The Court, therefore, finds that the total hours Plaintiff's counsel expended on the case, as well as the specific hours spent on the contested areas, are reasonable. The Court must next decide whether the Pepper Hamilton rates were reasonable.

b. Reasonableness of Rates Charged

As explained above, in determining the reasonableness of counsel's hourly rate, the Court must compare the prevailing attorneys' rates to the "rates for similar services by lawyers of reasonably comparable skill, experience, and reputation in the community." *Litton Indus., Inc.*, 200 N.J. at 387 (internal quotations and citation omitted). This "determination need not be unnecessarily complex or protracted, but the trial court should satisfy itself that the assigned hourly rates are fair, realistic, and accurate, or should make appropriate adjustments." *Rendine v. Pantzer*, 141 N.J. 292, 337 (1995).

In this matter, Plaintiff's billing rates are reasonable. Plaintiff provides the billing rates and titles for the Pepper Hamilton attorneys who worked on this matter.[9] Plaintiff's lead partner on the case, Angelo Stio ("Stio"), declared that these rates "represent Pepper Hamilton's standard discounted rates for TDAF throughout the time this matter has been pending." Stio

---

[9] Those rates are as follows: March 2013 – January 2014: Stephen G. Harvey, Partner, $445.50; Angelo A. Stio III, Partner $396.00; Jeffrey Carr, Associate $378.00; Chad Holtzman, Associate $207.00. February 2014 – February 2016: Angelo A. Stio III, Partner $460; Chad Holtzman, Associate $290. February 2016 – Present: Angelo A. Stio III, Partner $460; Frank Griffin IV, Of Counsel $470; Chad Holtzman, Associate $350; Francis Weber, Associate $250.

8

Decl. ¶¶ 12-15. Further, Stio attested that based on his knowledge of the "relevant New York and New Jersey market, these rates are in line with, if not less than, rates charged by similar New York and New Jersey based law firms of Pepper Hamilton's size." *Id.* ¶ 15. Finally, Stio provided each relevant attorney's date of bar admission and date of joining Pepper Hamilton. *Id.* ¶ 23.

Defendant argues that Plaintiff's declaration is insufficient because Stio "state[s] what [Pepper Hamilton's] normal billing rates are, not what the reasonable hourly rate is for competent counsel to handle this type of case." Lodato Decl. ¶ 29. While, the Court agrees that it would have been better practice for Plaintiff to include an affidavit from a non-interested party attesting to the reasonableness of the requested rates, it is not necessary here. Defendant fails to raise a specific complaint about the billing rates or provide comparative information to strengthen its argument that the requested hourly rates are unreasonable. Stio wrote his declaration as an officer of the court and provided sufficient information for this Court to do its own analysis and determine that the hourly billing rates are reasonable. Moreover, based on the Court's own knowledge of counsel rates in federal commercial litigation in this area, the Court agrees that Pepper Hamilton's hourly charges are reasonable.

## I. CONCLUSION

For the foregoing reasons, Plaintiff's motion is GRANTED in the amount of $184,844.78 for attorneys' fees and costs associated with litigating this matter. An appropriate Order accompanies this Opinion.

Dated: September 25, 2017

John Michael Vazquez, U.S.D.J.